GARAUFIS, J.   **ORIGINAL**

UNITED STATES DISTRICT COURT          BLOOM, M.J.
EASTERN DISTRICT OF NEW YORK

**CV 15      6942**

MICHAEL J. KNEITEL,
**Plaintiff,**                                 TRIAL BY JURY DEMAND

                                          YES   <u>XXXX</u>   NO____
-against-

**THE CITY OF NEW YORK, MARK RYVKIN**
(in his professional and individual capacity),**DET.**
**WILLIAM GREER (**in his official and individual
capacity), **DET. ALI SALAH** (in his official and
individual capacity), **SGT. ERIC DARGENIO** (in his
official and individual capacity), **LIEUTENANT**
**ROBERT DELANY** (in his official and individual
capacity), **DEPUTY INSPECTOR MICHAEL DEDO**
(in his official and individual capacity), **JOHN AND**
 **JANE DOE POLICE OFFICERS** (in their official
and individual capacities).
**Defendant(s).**

RECEIVED
DEC 04 2015
PRO SE OFFICE

Plaintiff in the above-captioned action alleges as follows:


**JURISDICTION.**

This is a civil action seeking relief and/or damages to defend and protect the rights
guaranteed by the Constitution of the United States.  This action is brought pursuant to **42**
**U.S.C. §§1983.**  The Court has jurisdiction over this action pursuant to **28 U.S.C.**
**§§1331, 1342(3) and (4) and 2201.**

    **I.      PREVIOUS LAWSUITS.**
**A.**      Have you begun other lawsuits in state or federal court dealing with the same
facts involved in this action or otherwise relating to your imprisonment?
YES (XX)   NO (  ).



**B.**      If your answer to A is Yes, describe the lawsuit.  If there is more than one lawsuit,
describe the additional lawsuits.

i.      **1.**      Parties to this previous lawsuit:

1

Plaintiffs:    **PEOPLE OF THE STATE OF NEW YORK.**

Defendant:    **MICHAEL KNEITEL**

2.        Court (if federal court, name the district; if state court, name the county).

**SUPREME COURT OF THE CITY OF NEW YORK,**
**COUNTY OF KINGS. CRIMINAL TERM**

3.        DOCKET NUMBER

**2013KN006147, 05743-2013**

4.        Name of Judge(s) to whom case was assigned:

**HONORABLE WILLIAM MILLER,**

**HONORABLE JOEL GOLDBERG,**

5.        Disposition:

**ALL CHARGES DISMISSED IN FAVOR OF THE PLAINTIFF**

6.        Approximate date of filing lawsuit:

**JANUARY 24, 2013, JULY 7, 2013**

7.        Approximate date of disposition:

**NOVEMBER 19, 2014**

II.    **PARTIES.**

A.             Plaintiff:    **MICHAEL KNEITEL**
Address:       450 Ocean Parkway (Apt 2D)
               Brooklyn, New York 11218.

B.    Defendant:    THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a transportation authority which acts as its agent in the area of public transportation and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police department and the employment of officers, detectives, command personnel as said risks attach to the public consumers of the services provided by the New York City Police Department.

2

**C.**     Defendant:     MARK RYVKIN, is a natural person, residing at 450 Ocean Parkway Apt 3D, Brooklyn, New York 11218.

**D.**     Defendant:     DET. WILLIAM GREER, is a NYC POLICE DEPARTMENT DETECTIVE, located at 1 Police Plaza, New York, New York 10038.

**E.**     Defendant:     DET. ALI SALAH, is a NYC POLICE DEPARTMENT DETECTIVE, located at 1 Police Plaza, New York, New York 10038.

**F.**     Defendant:     SGT. ERIC DARGENIO, is a NYC POLICE DEPARTMENT SERGEANT located at 1 Police Plaza, New York, New York 10038.

**G.**     Defendant:     LIEUTENANT ROBERT DELANEY, is a NEW YORK CITY POLICE DEPAARTMENT LIEUTENANT, located at 1 Police Plaza, New York, New York 10038.

**E.**     Defendant:     DEPUTY INSPECTOR MICHAEL DEDO, is a NEW YORK CITY POLICE DPARTMENT DEPUTY INSPECTOR, located at 1 Police Plaza, New York, New York 10038.

**F.**     Defendant:     JOHN AND JANE DOE POLICE OFFICERS, are Police Officers employed by the NEW YORK CITY POLICE DEPARTMENT, located at 1 Police Plaza, New York, New York 10038

## III.          LIST OF DEFENDANTS

**1.     THE CITY OF NEW YORK**


**2.     MARK RYVKIN**
450 Ocean Parkway Apt. 3D
Brooklyn, New York 11218

**3.     WILLIAM GREER**
One Police Plaza
New York, New York 10038

**4.     ALI SALAH**
One Police Plaza
New York, New York 10038

**5.     ERIC DARGENIO**
One Police Plaza
New York, New York 10038

3

**6.     ROBERT DELANEY**
One Police Plaza
New York, New York 10038

**7.     MICHAEL DEDO**
One Police Plaza
New York, New York 10038

**8.     JOHN & JANE DOE**
One Police Plaza
New York, New York 10038

## IV.          STATEMENT OF CLAIM.

### PRELIMINARY STATEMENT:

This action is to vindicate the civil rights of Michael Kneitel [hereinafter referred to as the Plaintiff], a 53 year old white male, residing at 450 Ocean Parkway, Apt 2D, in Brooklyn, New York. Mark Ryvkin was constantly harassing plaintiff. Plaintiff would call the NYPD for relief and the NYPD refused to act against Mark Ryvkin. When the plaintiff threatened Ryvkin with eviction...Ryvkin filed a false police report and, obtained two court orders of protection causing plaintiff's arrest, loss of income, embarrassment physical and emotional distress including separation from his family.

Moreover, when it was ultimately discovered Ryvkin lied to the NYPD and Grand Jury claiming he was assaulted and sustained serious injury then later, filing false instruments to re-arrest plaintiff for violating a court order...the NYPD once again did nothing.

### FACTS:

On or about the 24 day of January 2013, at approximately 1:00 PM plaintiff, was transported from his home at 450 Ocean Parkway, in Brooklyn, New York to the NYPD 66 precinct interrogation room, located at 5822 16th Avenue in Brooklyn, New York by Detective William Greer and his partner. At approximately 2:08 PM, claimant was Mirandized and, questioned about an alleged assault against his neighbor, Mark Ryvkin. Claimant denied any and all knowledge of an alleged assault committed against Mark Ryvkin. Furthermore, claimant advised Detective William Greer and the NYPD that Mark Ryvkin is not only "dishonest but dirty."

Ryvkin had a civil lawsuit against a neighbor where; claimant brought to light he [Ryvkin] lied under oath. The Judge threw his case against the defendant out thanks in part, to an affidavit claimant signed against Mr. Ryvkin in that civil case.
Claimant advised Detective William Greer and the NYPD of Ryvkin's nine vehicles bearing Pennsylvania license plates and, "forged" registration decals affixed to each and every vehicle.

Furthermore, in retaliation for causing him to lose his civil lawsuit, Mark Ryvkin stuck a "tooth pick" in claimant's intercom bell at approximately 1:00 AM, on or about

the 19 day of January 2013 (5 days prior to claimant's arrest). Claimant filed a police report of the incident and contacted the landlord to evict Mr. Ryvkin.

Consequently, plaintiff, had surgery to repair a ruptured distal biceps tendon. Plaintiff, at the time of the fabricated assault, was wearing a cast and, physically unable to lift or carry items, move the arm or, let alone commit any kind of assault.

Plaintiff told Detective Greer and the NYPD, at this point, any allegations of an assault by Mark Ryvkin is not only fiction, but retaliatory for foiling his $25,000.00 frivolous lawsuit and, seeking his eviction from the building. Detective Greer responded: "He [Mark Ryvkin] went to the hospital on a stretcher." At approximately 6:50 PM, Plaintiff was handcuffed and placed in the holding cell at the 66 precinct and charged with felonious assault on a person over the age of 65 inter alia other charges.

Plaintiff's arrest was processed in the 66precinct. His [plaintiff] belongings, shoelaces and, drawstring to his pants were confiscated. Plaintiff was placed in a filthy, unsanitary holding cage (fecal matter on the wall) without food, water and bathroom facilities, was held for hours until transport was arranged to Central Booking.

Plaintiff was transported to Central Booking in Kings County by the NYPD later that evening. A member of the 66 precinct who is unidentified handcuffed plaintiff by twisting and forcing plaintiff's arms behind his back causing extreme pain as well as an enormous amount of strain, pressure and tension to plaintiff's surgically repaired arm and, further cinching the hand cuffs tightly into plaintiff's wrists causing added pain, discomfort and loss of blood flow to his hands. Plaintiff screamed in pain and, explained to the officer he had had his arm surgically repaired just weeks prior and, cannot extend his arms behind his back due to the cast and pain. Plaintiff further advised the officer of the imminent danger of rupturing not only the surgically repaired arm but causing damage to the other arm as well. The Officer callously ignored plaintiff's screams of pain and, callously said: "The handcuffs are for my [the officer's] protection and, they are not supposed to be comfortable.

At arraignment, the Court issued a temporary order of protection against plaintiff which: allowed incidental contact within the building we reside.  Plaintiff was released on his own recognizance.

On or about the 21 day of April 2013 at approximately 9:45 PM, officers the NYPD 66 precinct appeared at plaintiff's residence. The Officers received a call from Mark Ryvkin alleging plaintiff violated a Court order of Protection by chasing Mark Ryvkin on foot around the block. Plaintiff told the officers; "That's simply ridiculous." PLaintiff has been home since 7:00 PM. Furthermore, if the Officers would care to check the video camera footage in the lobby, they would plainly see what plaintiff is saying is true. After some talking between themselves and obtaining a sworn statement under the penalty of perjury from claimant's spouse indicating claimant was home since 7:00 PM., the officer's were satisfied claimant did not violate the Court Order. However, the officers refused to arrest Mark Ryvkin for filing a false police report.

Furthermore, on the next court appearance, my legal aid informed the Court about the incident decrying the indifference and injustice of the NYPD and, Office of the Kings County District Attorney by not arresting Mark Ryvkin for deliberately and maliciously abusing a Court Order of Protection

Fast forward a few months and, on or about the 7 day of July 2013, at approximately 11:00 AM, Detective Salah Ali of the NYPD 66 precinct arrested claimant from his work place at 1941 Forest Avenue, Staten Island, New York and, transported him to the NYPD 66th precinct located at 5822 16th Avenue in Brooklyn, New York. The NYPD received a complaint from Mark Ryvkin alleging claimant violated the Court Order of Protection on or about the 26 day of June 2013, at approximately 11:00 AM, by calling Mark Ryvkin on the telephone and threatening to beat him up.

At arraignment, another Court Order of Protection was issued this time with a "FULL" stay away Order. This second arrest and subsequent Court Order not only placed claimant's job and career in jeopardy, but also separated claimant from his wife and daughter.

Plaintiff was forced to endure the dangers and pitfalls of the criminal justice system for twenty-two (22) months. This placed an enormous strain upon plaintiff and his family effecting not only their personal lives but precluded plaintiff from appointment to the title of Automotive Mechanic with the City of New York (plaintiff scored extremely high on the exam and, was placed #4 on the list) thereby affecting plaintiff's ability to obtain gainful employment and support himself and his family.

v.      On or about the 19 day of November 2014, nearly twenty-two (22) months after the first arrest…all of the charges against the claimant were dismissed. plaintiff avers all of this never would have happened had the NYPD done their jobs correctly, properly investigated all allegations against the claimant and, just used a scintilla of common sense.

Anybody with "connected brain cells" could plainly see Mark Ryvkin was highly motivated when he deliberately and maliciously falsely filed a police report against plaintiff in retaliation for claimant's involvement thwarting his attempt to use the Court and swindle an innocent old lady out of $25,000.00.

Moreover, Mr. Ryvkin was aware of my complaints to the landlord because of his noise until all hours of the morning and, converting a residential apartment into a junk- yard and, auto repair facility. Mr. Ryvkin was highly motivated to 'get rid' of claimant to save himself from the unpleasantness and inconvenience of an eviction.

The NYPD detectives should have asked themselves; what are Ryvkin's actual injuries? and, which story is credible? If Ryvkin will lie in a court of law under oath and penalties of perjury on a civil matter…how credible can he possibly be?

When the NYPD don't investigate this is what precisely happens. It turns out Ryvkin's medical report from the hospital was available to the NYPD prior to my arrest. The report clearly states: No lacerations, no abrasions, no bruising or swelling. After spending over ten hours in the Emergency Room undergoing a thorough battery of tests it was revealed…Mark Ryvkin had a kidney stone.

Furthermore, had Detective Salah Ali checked the phone records, he would have found there was no phone call to Mark Ryvkin from plaintiff on the 26 day of June 2013. Hence, no need for an arrest, no need for the embarrassment, humiliation, shame and, jeopardizing plaintiff's livelihood.

Hence plaintiff was arrested and, the lives of his family and own life were turned upside down and, devastated because the NYPD were either negligent in their job functions,

deliberately chose not to perform their jobs or, just simply greedy to get overtime for a "collar."

What is more appalling is the NYPD refused to act in an official capacity against Mark Ryvkin for forging registration decals and affixing them to his nine illegal vehicles, arrest him for the April 23, 2013 incident, arrest him for the January 19, 2013 or, arrest him and charge him with filing a false accusatory instrument for his actions on the 24 day of January 2013 and July 7, 2013.

## COUNT 1: VIOLATIONS OF 42 U.S.C. 1983: ARREST

Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs above with the same force and effect as if herein set forth.

At all times relevant herein, the conduct of all Defendants were subject to 42 U.S.C. secs. 1983, 1985, 1986, and 1989.

27. Acting under the color of law, Defendants worked a denial of plaintiff's rights, privileges or immunities secured by the United States Constitution or by Federal law, to wit,

Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997); (a) by depriving plaintiff of his liberty without due process of law, by taking him into custody and holding him there against his will, County of Sacramento v. Lewis. 523 U.S. 833 (1998); Youngberg v. Romeo, 457 U.S. 307, 315 (1982);

(b) by making an unreasonable search and seizure of his property without due process of law,

(c) by conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Smith equal protection of laws,

(d) by refusing or neglecting to prevent such deprivations and denials to plaintiff, thereby depriving plaintiff of his rights, privileges, and immunities as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979).

On 24 January 2013, at approximately 1:00 PM., Defendants Detective William Greer and John Doe did come to plaintiff's residence and ordered plaintiff to come to the police precinct with them.

Plaintiff was read his Miranda Rights and agreed to answer the Detectives questions. Plaintiff advised the detectives of the ongoing issues with Mark Ryvkin. That only five days prior, Plaintiff reported to the NYPD that at approximately 12:50 AM, Mark Ryvkin stuck a tooth pick in his door bell causing it to ring continuously. As a matter of fact the issues with Mark Ryvkin goes back years of excessive noise complaints and this last episode was reported to the landlord for the purpose of initiating eviction proceeding against Mr. Ryvkin. Consequently, on the date of the alleged assault, plaintiff advised the detectives that he never laid a hand on Mr. Ryvkin and, the Detectives observed plaintiff's arm in a cast and his hands were not cut or bruised. Plaintiff recently had surgery to repair a ruptured distal biceps tendon and was convalescing at home.

Moreover, Mr. Ryvkin has nine automobiles that he registers in Pennsylvania and, each of the registration decals are forgeries. Furthermore, Mark Ryvkin, on the date and time of the alleged assault was leaving the building with a battery charger cart to aid in starting his many cars and moving them from one side of the street to the other. Mr.

Ryvkin did not call the police to report an assault until after he moved his cars which; were parked in the Borough Park section of Brooklyn. Mr. Ryvkin and plaintiff reside in the Kensington section of Brooklyn.

Finally, plaintiff informed the detectives of Mr. Ryvkin's frivolous lawsuit which; plaintiff aided the defendant in that case for the purposes of disposing that case. Mr. Ryvkin lied under oath before the Court in that case indicating he works and lives in Upstate New York, from Monday to Thursday. Plaintiff contacted the defendant's attorney and offered testimony and proof that Mr. Ryvkin lied to the Court under oath and, if he lied in a civil matter for money…he would certainly lie for vengeance.

Plaintiff was in the precinct locked away in the interrogation room for hours without food or water and unable to leave the precinct. At approximately 6:50PM., plaintiff was informed that he was under arrest for the assault of Mark Ryvkin. Plaintiff was handcuffed and placed in an unsanitary holding cell with fecal matter spread on the wall. There was no water, no bathroom facilities and no food. Defendant's took plaintiff's property which included his cellular phone, keys, shoe laces and pants drawstring. Shortly thereafter Detective Greer photographed the Plaintiff for the purposes of Identification by Mark Ryvkin.

Hours later plaintiff was transported to Central Booking by officer John Doe. Plaintiff advised the officer of the pain the handcuffs were causing due to the cast and his recent surgery. However, the officer callously replied: "the handcuffs are for my [the officer's] protection, these are not made to be comfortable."

On or about the 7 day of July 2013 at approximately 12:00PM., Defendant Ali Salah and John Doe did come to plaintiff's place of employment in Staten Island, New York, placed Plaintiff under arrest and transported him to the 66 precinct in Brooklyn, New York.

The defendant advised plaintiff that he was in violation of a court order of protection by calling and threatening bodily harm on Mark Ryvkin on the 26 day of June 2013. Plaintiff advised the defendant this was not the first time Mr. Ryvkin alleged plaintiff violated a court order of protection. On or about the 21 day of April 2013, Ryvkin called the NYPD claiming he was chased around Ocean Parkway by the plaintiff. Furthermore, plaintiff parroted all previous statements putting Ryvkin's credibility in question. However, plaintiff was again transported to Central Booking.

On or about the 19 day of November 2014, all charges against the Plaintiff were dismissed.

Defendants City of New York, Deputy Inspector Michael Dedo, and the New York City Police Department negligently trained Defendants Detective Greer and Detective Salah.

Detective Greer and Detective Salah had an ulterior motive, namely, personal financial benefit, for arresting Smith and charging him with crimes he had not committed.

There was no warrant for the arrest of plaintiff on 24 January 2013 by Detective Greer, Detective John Doe and Sergeant Dargenio. The arrest was without reasonable grounds for said Defendants to believe Plaintiff had committed an offense and Defendants knew they were without probable cause to arrest Plaintiff.

There was no warrant for the arrest of plaintiff on the 7 day of July 2013, by Detective Salah and John Doe. The arrest was without reasonable grounds for sais defendants to believe plaintiff had committed an offense and defendants knew they were

8

VIOLATIONS OF 42 U.S.C. 1983: STRIP SEARCH

without probable cause to arrest plaintiff.

No complaint, information, or indictment was ever sworn against Plaintiff alleging offenses occurring prior to the moment Defendant Detective Greer and Detective Salah handcuffed Plaintiff and told him he was under arrest.

As a result of their **concerted unlawful and malicious arrest** by Defendants Detectives Greer, Salah John Doe, Eric Dargenio and Plaintiff was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.

WHEREFORE, Plaintiff demands judgment for the false arrest against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $1,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

"Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights). Smith v. Wade, 461 U.S. 30, 50-51 ((1983); Clark v. Taylor, 710 F.2d 4, 14 (1st Cir. 1983). Miga, *supra* at 355

## COUNT 2: VIOLATIONS OF 42 U.S.C. 1983: DETENTION AND CONFINEMENT

Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs above with the same force and effect as if herein set forth.

As a result of their **concerted unlawful and malicious detention and confinement** of Plaintiff, Defendants Detectives Greer and Salah deprived plaintiff of both his right to his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.

WHEREFORE, Plaintiff demands judgment for the false detention and confinement against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $1,00,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 3: VIOLATIONS OF 42 U.S.C. 1983: STRIP SEARCH

Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs above with the same force and effect as if herein set forth.

71. As a result of their **concerted unlawful and malicious arrest, detention, and confinement** of plaintiff, Defendants Detective Greer and Detective Salah caused plaintiff to be subjected in the Kings County Central Booking County jail to a **strip search of his body**, including his rectal cavity, in a situation where there was no reason to believe that weapons or contraband had been concealed on or in his body, and thus deprived Smith of both his right to liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of

the Fourth, Fifth, Ninth, and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.

WHEREFORE, Plaintiff demands judgment for the bodily strip search against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $1,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 4: **VIOLATIONS OF 42 U.S.C. 1983: CONSPIRACY**

Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs above with the same force and effect as if herein set forth.

As a result of their **concerted unlawful and malicious conspiracy** of Defendants Mark Ryvkin, Detective Greer, Detective Salah, Sergeant Dargenio, Lieutenant Delaney, Deputy Inspector Dedo, plaintiff was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983 and 1985.

WHEREFORE, Plaintiff demands judgment for the conspiracy against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $1,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 5: **VIOLATIONS OF 42 U.S.C. 1983:**
**REFUSING OR NEGLECTING TO PREVENT**

Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs above with the same force and effect as if herein set forth.

At all times relevant to this Complaint, Defendants Detective Greer and Detective Salah as police detectives of the New York City Police Department were acting under the direction and control of Defendant Deputy Inspector Michael Dedo, Lieutenant Delaney and Defendant City of New York.

Acting under color of law and pursuant to official policy or custom, Buffalo Bill, John Does, and the City of New York knowingly, recklessly, or with gross negligence failed

to instruct, supervise, control, and discipline on a continuing basis Defendant police officers in their duties to refrain from:

**(a)** unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

**(b)** unlawfully and maliciously arresting, imprisoning and prosecuting a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

**(c)** conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the State of New York; and

**(d)** otherwise depriving Plaintiff of his constitutional and statutory rights, privileges, and immunities.

10

Defendants Michael Dedo, Robert Delaney, Eric Dargenio and the City of New York had knowledge or, had they diligently exercised that duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants Michael Dedo, Robert Delaney, Eric Dargenio and the City of New York had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

Defendants Michael Dedo, Robert Delaney, Eric Dargenio and the City of New York directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant police officers heretofore described.

As a direct and proximate cause of the negligent and intentional acts of Defendants Dedo, Delaney, Dargenio and the City of New York as set forth in paragraphs above, Plaintiff suffered physical injury, loss of income, and severe mental anguish in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. sec. 1983.

WHEREFORE, Plaintiff demands judgment against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $1,000,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $1,000,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 6: MALICIOUS PROSECUTION

Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs above with the same force and effect as if herein set forth.

Defendants instituted criminal process against the plaintiff with malice:

**(a)** Mark Ryvkin played an active part in the initiation of the criminal proceedings;

**(b)** Detectives Does played an active part in the initiation of the criminal proceedings as Defendant Detective's Greer's and Salah's partner by arresting and causing the false imprisonment of plaintiff; and

**(c)** Officer Bill signed the criminal complaint against Smith.

The charges were not based upon probable cause, that is the state of the facts in the mind of the prosecutor would not lead a man of ordinary caution and prudence to believe, or entertain an honest or strong suspicion that plaintiff was guilty.

**(a)** Defendants Officer Bill and Officer Ed had a duty to ascertain whether there was reasonable and probable cause for a prosecution, to wit, knowing that plaintiff assaulted Mark Ryvkin, Defendants Detective Greer and Officer had a duty to ascertain whether evidence existed that an assault against Ryvkin had actually occurred;

**(b)** Defendants Detective Greer and Detective Salah breached their duty;

**(c)** Defendants Detective Greer had information regarding Mark Ryvkin's Medical Report indicating he had no lacerations, no bruising, no swelling or trauma. Mr. Ryvkin after extensive medical testing was diagnosed with a kidney stone. Moreover, mark Ryvkin's official certified phone records do not indicate he received a phone call from the plaintiff on the 26 day of June 2013.

**(d)** Mark Ryvkin recklessly made categorical statements to Detective Ali Salah accusing the plaintiff of violating a court order by calling and threatening Ryvkin and those statements resulted in plaintiff's arrest.

The criminal proceeding terminated in favor of the plaintiff when the assistant district attorney recommended the dismissal of all four charges against plaintiff and the court accepted the recommendation and dismissed the charges against plaintiff.

Defendants City of New York and Michael Dedo, Robert Delaney, Eric Dargenio are liable under the doctrine of respondeat superior.

**WHEREFORE**, Plaintiff Kneitel demands judgment against all Defendants for injunctive relief and actual, special, compensatory damages in an amount deemed at time of trial to be just, fair, and appropriate.

## COUNT 7: <u>MALICIOUS ABUSE OF PROCESS</u>

Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 84 above with the same force and effect as if herein set forth.

Defendants maliciously used a "legal process `to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.'"

Mark Ryvkin knew or should have known that the complaint was groundless and he sought to use the process for an ulterior purpose, including, but not limited to, the purpose of aiding his cause against eviction for harassing another tenant.

Defendants Detective Greer and Detective Salah knew or should have known that the complaint initiated was groundless.

Defendants Detective Greer and Detective Salah used the legal process with the ulterior purpose, to wit, for personal financial benefit.

Defendants City of New York and Michael Dedo are liable under the doctrine of respondeat superior.

WHEREFORE, Plaintiff Kneitel demands judgment against all Defendants for injunctive relief and actual, special, compensatory damages, in an amount deemed at time of trial to be just, fair, and appropriate.

## COUNT 8: <u>FALSE ARREST AND IMPRISONMENT</u>

Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs above with the same force and effect as if herein set forth.

At all times relevant herein, **(a)** the Defendants acted with the intention of confining Plaintiff within fixed boundaries, **(b)** the act directly or indirectly resulted in confinement, and **(c)** Plaintiff was conscious of the confinement.

As a direct and proximate result of the conduct of the Defendants, plaintiff suffered harm and damages including but not limited to the aforesaid damages.

Defendants City of New York and Michael Dedo are liable under the doctrine of respondeat superior.

WHEREFORE, Plaintiff demands judgment against all Defendants for injunctive relief and actual, special, compensatory damages, attorneys' fees and costs of the litigation in an amount deemed at time of trial to be just, fair, and appropriate.

**COUNT 9: <u>BATTERY</u>**

Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs above with the same force and effect as if herein set forth.

Without the consent of Plaintiff, Defendants Detectives Greer, Salah and Officer John Doe intentionally, harmfully, and offensively touched plaintiff by handcuffing him.

Without the consent of plaintiff, Defendants Detective Greer, Detective Salah indirectly caused an unknown police officer at the Kings County Central Booking jail to intentionally, harmfully, and offensively touch Smith when strip-searching, including a search of his bodily cavities.

Defendants City of New York and Michael Dedo, Robert Delaney and Eric Dargenio are liable under the doctrine of respondeat superior.

***WHEREFORE***, Plaintiff demands judgment against Defendants Officer Bill and Officer Ed for injunctive relief and actual, special, and compensatory damages in an amount deemed at time of trial to be just, fair, and appropriate.

**COUNT 10: <u>CONSPIRACY</u>**

Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs above with the same force and effect as if herein set forth.

All the Defendants **(a)** had an object to be accomplished; **(b)** had an agreement on the object or course of action; **(c)** performed one or more unlawful overt acts; and **(d)** caused Plaintiff damages that were a direct result of those acts.

In furtherance of their object, defendants did two or more overt acts against the plaintiffs. Those unlawful overt acts include, but are not limited to, the following:

**(a)** Ryvkin intentionally misrepresented to Detective Greer he was assaulted by plaintiff and suffered serious medical injuries requiring hospitalization. Detective Greer did not see any injuries on Ryvkin.

**(b)** Detective William Greer knew or should have known that Ryvkin misrepresented the facts of the alleged assault.

**(c)** Ryvkin intentionally misrepresented to police officers John and Jane Doe plaintiff violated a court order by chasing him around Ocean Parkway.

**(d)** When Officers John and Jane Doe determined Ryvkin was playing a hoax, the officers did nothing

**(e)** Ryvkin deliberately misrepresented to Detective Salah plaintiff violated the court order on the 26 day of June 2013 by placing a threatening phone call to Ryvkin.

**(f)** Detective Salah knew or should have known Ryvkin misrepresented the alleged violation of a court order

**(g)** As a direct result of Ryvkin's misrepresentations Detectives Greer and Salah arrested, detained and confined plaintiff on grounds that **(i)** plaintiff assaulted Ryvkin **(ii)** plaintiff violated a court order of protection

The defendants agreed that the object or course of action was to arrest, detain, and confine Smith without probable cause, and maliciously charge and prosecute him with crimes.

Defendants City of New York and Michael Dedo are liable under the doctrine of respondeat superior.

Plaintiff suffered harm and damages that are a direct result of those acts.

***WHEREFORE***, Plaintiff demands judgment against all Defendants for injunctive

relief and actual, special, compensatory and punitive damages, attorney's fees, costs, expenses, and interest in an amount deemed at time of trial to be just, fair, and appropriate.

## COUNT 11: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs above with the same force and effect as if herein set forth.

Defendants intentionally and deliberately inflicted emotional distress on plaintiff by maliciously prosecuting plaintiff, or by abusing the lawful process by unlawful purpose, or by violating plaintiff's constitutional rights, or by falsely arresting and imprisoning the plaintiff, by conspiring against plaintiff, or by interfering with plaintiff's state civil rights by threats, coercion, or intimidation, or knew or should have known that emotional distress was the likely result of their conduct.

Defendants conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

The actions of the Defendants were the cause of plaintiff's distress.

Plaintiff is a reasonable man.

The emotional distress sustained by plaintiff was severe and of a nature that no reasonable man could be expected to endure.

As a result of the Defendants' extreme and outrageous conduct, Plaintiff was, is, and, with a high degree of likelihood, will continue to be emotionally distressed due to the intentional exclusion.

Defendants City of New York and Michael Dedo are liable under the doctrine of respondeat superior.

As a result of the Defendants' extreme and outrageous conduct, plaintiff has suffered and will continue to suffer mental pain and anguish, severe emotional trauma, embarrassment, and humiliation.

***WHEREFORE***, Plaintiff demands judgment, including interest, jointly and severally against Defendants Mark Ryvkin, William Greer, Ali Salah, Robert Delaney, Eric Dargenio, John and Jane Doe, City of New York, Michael Dedo in an amount deemed by this Court to be just and fair and in any other way in which the Court deems appropriate.

## COUNT 12: RESERVED FOR NEGLIGENCE
### (until 6 months after presentment)

Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs above with the same force and effect as if herein set forth.

Defendants City of New York and Police Deputy Inspector Dedo owed a duty to supervise or train the officers and to take steps to prevent events such as occurred here, to wit, the false arrest and imprisonment and the swearing to charges without probable cause.

Defendants Police Officers John and Jane Doe, Detectives Greer, Salah owed a duty to act according to the standard of ordinary care of a police officer, to wit, to conduct a proper investigation, the failure of which was the proximate cause of Plaintiff's injury.

Defendants City of New York and Police Deputy Inspector Dedo breached that

14

duty by failing to act as an ordinary police deputy inspector would act, to wit, by failing to perform his duties and by failing adequately to control and to supervise his officers.

As a result of those breaches, which were the proximate causes of Plaintiff's injury, Plaintiff suffered harm and damages.

Defendants City of New York and Michael Dedo are also liable under the doctrine of respondeat superior.

**WHEREFORE**, Plaintiff demands judgment against Defendants City of New York, Officer John and Jane Doe, Detectives Greer and Salah, and Michael Dedo for injunctive relief and actual, special, compensatory and punitive damages, attorney's fees, costs, expenses, and interest in an amount deemed at time of trial to be just, fair, and appropriate.

## COUNT 13: RESERVED FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
**(until 6 months after presentment)**

Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs above with the same force and effect as if herein set forth.

138. Defendants continually negligently inflicted emotional distress on the Plaintiffs.

139. Defendants had a continuing affirmative duty to perform their professional services in such a manner as not to inflict emotional distress on the Plaintiffs.

140. Defendants breached their duties to the plaintiffs.

141. The plaintiff never interfered with the defendants' obligations under the above-described duties.

142. Plaintiff suffered not only physical symptomatologies but also, as a consequence of the physical injury, mentally by Defendants' breach of duty.

143. Plaintiff was, is, and, with a high degree of likelihood, will continue to be inflicted with emotional distress due to the negligence of Defendants.

144. Defendants City of New York and Deputy Inspector Michael Dedo are also liable under the doctrine of respondeat superior.

145. As a result of the Defendants' negligent conduct, plaintiff has suffered and will continue to suffer physical symptomatolo-gies, pain, anguish, severe emotional trauma, embarrassment, and humiliation.

**WHEREFORE**, Plaintiff demands judgment, including interest, jointly and severally against Defendants William Greer, Ali Salah of NYPD, and Michael Dedo in an amount deemed by this Court to be just and fair and in any other way in which the Court deems appropriate.

**SIGNED THIS 4 DAY OF December 2015. I DECLARE UNDER THE PENALTIES OF PERJURY THAT THE FOREGOING IS TRUE.**

**MICHAEL J. KNEITEL**
**450 OCEAN PARKWAY (APT 2D)**
**BROOKLYN, NEW YORK 11218**

15