UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MICHAEL J. KNEITEL,

                          Plaintiff,

           -against-

THE CITY OF NEW YORK, MARK RYVKIN (in
his professional and individual capacity), DET.
WILLIAM GREER (in his official and individual
capacity), DET. ALI SALAH (in his official and
individual capacity), SGT. ERIC DARGENIO (in
his official and individual capacity), SGT.
WILLIAM BARBIERI (in his official and
individual capacity), SGT. ALAN SOLOMON (in
his individual and official capacity), VINCENT
MOLININI (TAX NO 904598) in his individual
and official capacity), P.O.M. DAVID YAN (in
his individual and official capacity),
LIEUTENANT ROBERT DELANY (in his official
and individual capacity), DEPUTY INSPECTOR
MICHAEL DEDO (in his official and individual
capacity), JOHN AND JANE DOE POLICE
OFFICERS (in their official and individual
capacities), COURTNEY HOGG (in his
individual and official investigative capacity),
KRYSTEN TENDY (in her individual and official
investigative capacity), EMILY SPERLING (in
her official and investigative screening
capacity),

                         Defendants.

**MEMORANDUM & ORDER**
**15-CV-6942 (NGG) (LKE)**

1

NICHOLAS G. GARAUFIS, United States District Judge.

*Pro se* Plaintiff Michael J. Kneitel brings this action against Defendants the City of New York ("City"), Mark Ryvkin,[1] Detective William Greer, Detective Ali Salah, Sergeant Eric Dargenio, Sergeant William Barbieri, Sergeant Alan Solomon ("Alan"), Vincent Molinini, David Yan, Lieutenant Robert Delany,[2] Deputy Inspector Michael Dedo,[3] John and Jane Doe Police Officers, Courtney Hogg, Krysten Tendy, and Emily Sperling.[4] (*See* Am. Compl. at 3-4.) Kneitel pleaded a total of 13 counts, contending: violations of 42 U.S.C. § 1983 ("Section 1983") (Counts 1-5), malicious prosecution (Count 6), malicious abuse of process (Count 7), false arrest and imprisonment (Count 8), battery (Count 9), conspiracy (Count 10), intentional infliction of emotional distress (Count 11), negligence (Count 12), and negligent infliction of emotional distress (Count 13). (*Id.* at 8-18.) Pending before the court is Defendants City, Barbieri, Dargenio, Dedo, Delaney,

---

[1] The Clerk of Court entered a default against Mark Ryvkin on May 5, 2020. (*See* Entry of Default (Dkt. 145).)

[2] The court notes that City Defendants refer to Defendant Lieutenant Robert Delany as Lieutenant Robert "Delaney." (*See* City Defs.' Not. of Mot. (Dkt. 167).) The court uses Plaintiff's spelling as alleged in the Amended Complaint. (*See* Am. Compl. (Dkt. 32).)

[3] The court notes that City Defendants refer to Defendant Deputy Inspector Michael Dedo as Deputy Inspector Michael "Deddo." (*See* City Defs.' Not. of Mot.) The court uses Plaintiff's spelling as alleged in the Amended Complaint. (*See* Am. Compl. (Dkt. 32).)

[4] The court dismissed all claims against Emily Sperling, concluding that she is entitled to absolute prosecutorial immunity. *See Kneitel v. City of New York*, No. 15-CV-6942 (NGG) (LB), 2017 WL 5508367, at *5 (E.D.N.Y. Nov. 15, 2017).

Greer, Hogg, Officer Colin Miskowitz,[5] Molinini, Salah, Alan, Detective Joseph Solomon ("Joseph"), [6] Tendy, and Yan's (collectively, "City Defendants") motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56, which Kneitel opposes. (City Defs.' Not. of Mot.; City Defs.' Mem. in Supp. of Mot. ("Mot.") (Dkt. 170); Pl.'s Mem. in Opp'n to Mot. ("Opp.") (Dkt. 163 at ECF pp. 10-42); Reply in Supp. of Mot. ("Reply") (Dkt. 173).) For the reasons set forth below, City Defendants' motion for summary judgment is GRANTED.

## I.  BACKGROUND

### A.  Factual Background[7]

Kneitel first met Mark Ryvkin in 2010. (City Defs.' Rule 56.1 Stmt. ¶ 1.) Since then, Ryvkin has lived in the Brooklyn, New

---

[5] The court granted Kneitel leave to amend his complaint to add Officer Colin Miskowitz as a Defendant on March 7, 2017. (*See* Mar. 7, 2017 Order (Dkt. 45).)

[6] The court granted Kneitel leave to amend his complaint to add Detective Joseph Solomon as a Defendant on October 17, 2016. (*See* Oct. 17, 2016 Order (Dkt. 9).)

[7] The following facts are drawn from the parties' respective Local Civil Rule 56.1 statements. The relevant Rule 56.1 statements include City Defendants' Rule 56.1 Statement in support of the instant motion for summary judgment, (City Defs.' Rule 56.1 Stmt. (Dkt. 169)), and Kneitel's response (*see* Pl.'s General Obs. and Opp. to City Defs.' Mot ("Pl.'s Stmt. of Facts") (Dkt. 163 at ECF pp. 1-9)). While Kneitel's Statement of Facts fails to comply with Local Rule 56.1 because it does not contain "correspondingly numbered paragraph[s]" responding to City Defendants' Rule 56.1 Statement, (*see* Joint Local Rules, S.D.N.Y. & E.D.N.Y. Loc. Civ. R. 56.1(c)), its paragraphs are numbered and many of Plaintiff's facts contain citations to attached evidence, (*see* Joint Local Rules, S.D.N.Y. & E.D.N.Y. Loc. Civ. R. 56.1(d)). The court accordingly disregards Kneitel's failure to fully comply with Local Civil Rule 56.1. *See Gaft v. Mitsubishi Motor Credit of Am.*, No. 7-CV-527 (NG) (LB), 2009 WL 3148764, at *4 (E.D.N.Y. Sept. 29, 2009) (reasoning that where a *pro se* party opposes an adverse party's Rule 56.1

York apartment unit located above Kneitel's apartment. (*Id.* ¶ 2.) Kneitel asserts that "[f]rom January 2010 through December 2012 dozens of complaints regarding the noise coming from Mark Ryvkin's apartment had been reported to the NYPD." (Pl.'s Stmt. of Facts ¶ 8 (citing Nov. 17, 2024 Kings County Supreme Court Hr'g Tr. 27-31 (Dkt. 163 at ECF pp. 50-51) (Assistant District Attorney reporting to the court that Kneitel lodged "dozens" of complaints against Ryvkin about noise coming from Ryvkin's apartment)).)[8] A few days prior to January 23, 2013, Kneitel called the police on Ryvkin because Ryvkin allegedly stuck a toothpick in Kneitel's doorbell. (*See* Pl.'s Stmt. of Facts ¶ 9.)

On January 23, 2013, Kneitel waited for Ryvkin by the lobby of their apartment building and confronted Ryvkin about noise emanating from Ryvkin's apartment, using profanity to threaten Ryvkin with eviction. (City Defs.' Rule 56.1 Stmt. ¶ 3.) According to Kneitel's deposition testimony, Kneitel was "annoyed" with Ryvkin's behavior, noting that it was "the kind of behavior where, you know. . . you're asking to get punched in the face." (*Id.* ¶ 4 (quoting Kneitel Dep. Tr. (Dkt. 168-1) 91:10-16).)

---

statement, "the court has discretion to overlook failures to conform to the Local Rules, including Rule 56.1").

Unless otherwise noted, the facts are undisputed. However, to the extent an assertion or denial of fact is not supported by admissible evidence, the court will disregard that assertion or denial. *See* Joint Local Rules, S.D.N.Y. & E.D.N.Y. Loc. Civ. R. 56.1(d) ("Each statement by the movant or opponent under Rule 56.1(a) and (b), including each statement denying and controverting any statement of material fact, must be followed by citation to evidence that would be admissible."); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]here there are no citations or where the cited materials do not support the factual assertions in the [Rule 56.1] Statements, the Court is free to disregard the assertion[s]."), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

[8] The court takes notice of the hearing transcript cited by Kneitel, but notes that "the arguments of counsel are not evidence." *Pretzantzin v. Holder*, 736 F.3d 641, 651 (2d Cir. 2013).

1.  Kneitel's January 24, 2013 arrest

On January 24, 2013, Ryvkin called 911 and reported to New York Police Department ("NYPD") officer Defendant Yan that he had been punched by Kneitel. (City Defs.' Rule 56.1 Stmt. ¶ 5; *see* Ryvkin 911 Report Audio Recording (Opp., Ex. D (Ryvkin complaining to 911 dispatcher of back pain from the attack).) [9] According to Ryvkin's testimony before the Grand Jury, Kneitel struck Ryvkin in the face and proceeded to "beat [Ryvkin's] face and then beat [Ryvkin's] body." (City Defs.' Rule 56.1 Stmt. ¶ 6; Sept. 10, 2013 Grand Jury Tr. 1 (Dkt. 168-4) 8:17-25, 9:4-13 (Ryvkin testifying that he was injured and subsequently taken to Maimonides Medical Center for treatment).) Ryvkin was later released from the hospital on that day with a "Primary Diagnosis" of "pain - back." (Ryvkin Medical Records (Dkt. 163 at ECF p. 68); Pl.'s Stmt. of Facts ¶ 11 ("There was no evidence of bruising, swelling, lacerations etc.") (citing Ryvkin Medical Records at ECF p. 73).) At the time of the incident, Ryvkin was 66 years old and Kneitel was approximately 51 years old. (City Defs.' Rule 56.1 Stmt. ¶ 7.)

Later that day, Ryvkin appeared at the NYPD's 66th Precinct for an interview with the detective assigned to the case, Detective Greer. (City Defs.' Rule 56.1 Stmt. ¶ 9; Pl.'s Stmt. of Facts ¶ 12.) During that interview, Ryvkin corroborated the story he reported to the 911 dispatcher regarding Kneitel's attack on him earlier that day. (*See* Ryvkin Compl. Follow-Up Rprt. ("Follow-Up Rprt.") (Dkt. 168-7) at ECF p. 2 ("Mr. Ryvkin advises that he wants an order of protection against [Kneitel].")) At around 1 P.M. that day, Detective Greer and another detective appeared at Kneitel's apartment and transported Kneitel to the 66th Precinct

---

[9] With the court's permission, Kneitel submitted a USB-drive with the audio recording of his 911 call as Exhibit D to his opposition to City Defendants' motion for summary judgment. (*See* Nov. 7, 2024 Order (directing Kneitel to serve a copy of the USB-drive on City Defendants).)

for questioning. (*See* Pl.'s Stmt. of Facts ¶ 13 (citing Kneitel Written Stmt. (Dkt. 163 at ECF p. 98).) During Kneitel's questioning at the precinct, Kneitel told Detective Greer that Ryvkin was lying about the assault and asked Detective Greer to check the building's video cameras. (*See id.* ¶ 14 (citing Greer Dep. Tr. (Dkt. 163 at ECF pp. 99-106) (testifying that the NYPD tried to retrieve the footage from the building's video camera but was unsuccessful)).) On or about 5 P.M. that day, Detective Greer arrested Kneitel for assault in the second degree on a person who is 65 years of age or older in violation of New York Penal Law § 120.05(12). (*See* Kneitel Dep. Tr. 109:1-21; City Defs.' Rule 56.1 Stmt. ¶ 11.) Detective Greer did not handcuff Kneitel when he drove Kneitel to the 66th Precinct, or when he took Kneitel to a cell in the precinct. (*See* City Defs.' Rule 56.1 Stmt. ¶ 13.)

Detective Greer later signed a criminal court complaint alleging that Kneitel committed assault in the second degree in violation of New York Penal Law § 120.05(12), assault in the third degree in violation of New York Penal Law § 120.00(1), attempted assault in the third degree in violation of New York Penal Law § 110/120.00(1), menacing in the third degree in violation of New York Penal Law § 120.15, and harassment in the second degree in violation of New York Penal Law § 240.26(1). (*Id.* ¶ 12 (citing Jan. 24, 2013 Crim. Court Compl. ("Jan. 24 Crim. Compl.") (Dkt. 168-8)).)

On January 25, 2013, an NYPD officer that Kneitel described as "white," "short," and "nasty" handcuffed Kneitel inside the precinct and brought Kneitel to Central Booking, where Kneitel alleges that he was strip searched. (*Id.* ¶¶ 14-15.) Later that day, Kneitel was arraigned and released on his own recognizance after approximately 18 hours in custody. (*Id.* ¶ 16.) Also on January 25, 2013, the Kings County Supreme Court issued an Order of Protection against Kneitel ordering him to refrain from assaulting, harassing, menacing, intimidating, or threatening

Ryvkin. (*Id.* ¶ 17.)[10] The Order of Protection was in effect until July 26, 2013. (*Id.* ¶ 18.) On February 4, 2013, the Kings County District Attorney charged Kneitel with assault in the third degree in violation of New York Penal Law § 120.00(1), attempted assault in the third degree in violation of New York Penal Law § 110/120.00(1), menacing in the third degree in violation of New York Penal Law § 120.15, and harassment in the second degree in violation of New York Penal Law § 240.26(1). (*Id.* ¶ 19; Feb. 4, 2013 Crim. Court Compl. ("Feb. 4 Crim. Compl.") (Dkt. 168-12).)[11] On April 21, 2013, Ryvkin called 911 and reported that Kneitel was following him and took pictures. (*See* Pl.'s Stmt. of Facts ¶ 16 (alleging that Ryvkin fabricated this story but citing only a one-page Incident Record which Kneitel described as a "NYPD printout"); Apr. 21, 2013 Incident Record (Dkt. 163 at ECF p. 224) ("NEIGHBOR FOLLOWED HIM. . TOOK PICS").)

### 2.    Kneitel's July 7, 2013 arrest

On June 30, 2013, Ryvkin reported to the NYPD, including Officer Salah, that Kneitel called Ryvkin and said "I'm gonna get you." (*See* City Defs.' Rule 56.1 Stmt. ¶ 20; Pl.'s Stmt. of Facts ¶ 17.) On July 7, 2013, Officer Salah arrested Kneitel for violating

---

[10] City Defendants cite, *inter alia,* to Exhibit L of the Declaration of Bailey Forcier ("Forcier Decl.") (Dkt. 168) filed in support of their motion. (*See* City Defs.' Rule 56.1 Stmt. ¶ 17 (citing "July 7, 2013 Criminal Court Complaint, annexed to Forcier Decl. as Ex. L").) However, the July 7, 2013 Criminal Court Complaint is actually annexed to the Forcier Declaration as Exhibit K. (*See* Forcier Decl. ¶ 12 ("Annexed hereto as 'Exhibit K' is a true and correct copy of the July 7, 2013 Criminal Court Complaint."); Jul. 7, 2013 Crim. Court Compl. (Dkt. 168-11).)

[11] City Defendants cite to Exhibit M of the Forcier Declaration. (*See* City Defs.' Rule 56.1 Stmt. ¶ 19 ("February 4, 2013 Criminal Court Complaint, annexed to Forcier Decl. as Ex. M").) However, the February 4, 2013 Criminal Court Complaint is actually annexed to the Forcier Declaration as Exhibit L. (*See* Forcier Decl. ¶ 13 ("Annexed hereto as 'Exhibit L' is a true and correct copy of the February 4, 2013 Criminal Court Complaint"); Feb. 4 Crim. Compl.)

the Order of Protection. (City Defs.' Rule 56.1 Stmt. ¶ 21.) On that date, Kneitel was first brought to the precinct and then later brought to Central Booking by two unknown NYPD officers. (*Id.* ¶¶ 22-23.) Kneitel was not handcuffed until the NYPD transported him to Central Booking. (*See id.*) Later that day, Kneitel was arraigned at the Kings County Supreme Court and that court issued a "full stay away order of protection" against Kneitel and in favor of Ryvkin. (*Id.* ¶¶ 25-26.) Kneitel was then released on his own recognizance after approximately 11 hours in custody. (*Id.* ¶ 25.)

On July 7, 2013, Officer Salah signed a criminal court complaint alleging that Kneitel had committed criminal contempt in the first degree in violation of New York Penal Law §§ 215.51(B)(V) and 215.51(B)(VI), criminal contempt in the second degree in violation of New York Penal Law § 215.50(3), aggravated harassment in the second degree in violation of New York Penal Law § 240.30(1)(A), menacing in the third degree in violation of New York Penal Law § 120.15, and harassment in the second degree in violation of New York Penal Law § 240.26(1). (*Id.* ¶ 27.)

Kneitel was subsequently indicted[12] and charged with crimes related to the arrests on January 24, 2013 and July 7, 2013,

---

[12] Kneitel asserts that during Grand Jury proceedings, Assistant District Attorney Tendy "knew from the medical reports that Ryvkin did not have a lacerated lip, yet she elicited the false and misleading information anyway" but ultimately never submitted assault charges to the Grand Jury for consideration because she "knew that Mr. Ryvkin was never assaulted." (*See* Pl.'s Stmt. of Facts ¶ 20 (citing Sept. 10, 2013 Grand Jury Hr'g Tr. 2 (Dkt. 163 at ECF pp. 225-234)).) The court disregards this assertion because the cited transcript excerpt of Ryvkin's Grand Jury testimony does not support Kneitel's factual assertions regarding what Assistant District Attorney Tendy knew during the Grand Jury proceedings. *See Holtz,* 258 F.3d 62 at 73. The court also disregards Kneitel's other factual assertions regarding Assistant District Attorney Tendy's knowledge during the Grand Jury because the cited documents do not support Kneitel's assertions. (*See* Pl.'s Stmt. of Facts ¶¶ 21-22.) *See Holtz,* 258 F.3d 62 at 73.

including attempted assault in the second degree, attempted assault in the third degree, harassment in the second degree, aggravated harassment in the second degree, criminal contempt in the first degree, and criminal contempt in the second degree. (*Id.* ¶ 28.) On November 17, 2014, upon Assistant District Attorney Tendy's application, the Kings County Supreme Court dismissed the criminal contempt and aggravated harassment charges against Kneitel because the prosecutors failed to promptly notify Kneitel's criminal defense counsel when they learned that the date of the phone call that was the basis for the charges was June 25, 2013, and not June 26, 2013, as alleged in the indictment. (*See* Pl.'s Stmt. of Facts ¶ 23.) On November 19, 2014, the Kings County Supreme Court dismissed the case against Kneitel on speedy trial grounds pursuant to N.Y. Crim. Proc. Law § 30.30. (City Defs.' Rule 56.1 Stmt. ¶ 29; Pl.'s Stmt. of Facts ¶ 24.)

Kneitel never sought any medical treatment because of these incidents. (City Defs.' Rule 56.1 Stmt. ¶ 30.) On December 16, 2014, Kneitel filed a Notice of Claim against the City. (*Id.* ¶ 31.)

## B.  Procedural Background

On December 4, 2015, Kneitel filed his initial Complaint. (*See generally* Complaint ("Compl.") (Dkt. 1).) On January 13, 2017, Kneitel amended his complaint. (*See generally* Am. Compl.)

On May 24, 2017, City Defendants filed an unopposed motion to dismiss Kneitel's claims against Assistant District Attorney Emily Sperling. (*See* Mot. to Dismiss (Dkt. 74).) On November 15, 2017, the court granted City Defendants' motion and dismissed Kneitel's claims against Sperling because she is entitled to absolute prosecutorial immunity. *Kneitel*, 2017 WL 5508367, at *5. On January 18, 2018, City Defendants filed their answer. (*See* Answer (Dkt. 96).)

After approximately two years of discovery and a change in counsel for City Defendants, City Defendants filed their fully-briefed motion for summary judgment on December 6, 2024. (*See* Mot.; Opp.; Reply.) That motion is now pending before the court.

## II.  LEGAL STANDARD

To obtain Rule 56(a) relief, movants must "identify[] each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). Movants are entitled to summary judgment if they "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *Kemp v. Regeneron Pharms., Inc.*, 117 F.4th 63, 68 (2d Cir. 2024). A fact is material when it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Gayle v. Gonyea*, 313 F. 3d 677, 682 (2d Cir. 2002).[13] "For a genuine dispute regarding a material fact to warrant a jury trial, there must be sufficient evidence supporting the claimed factual dispute 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Goldberg v. City of New York*, No. 19-CV-4241 (GBD) (KHP), 2021 WL 4482149, at *3 (S.D.N.Y. Sept. 30, 2021) (quoting *Anderson*, 477 U.S. at 249). However, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

"The movant carries the burden of proving that no genuine factual dispute exists." *Arce v. Sovereign Indus. Grp. Inc.*, No. 19-CV-

---

[13] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

489 (NGG) (JRC), 2025 WL 102449, at *3 (E.D.N.Y. Jan. 15, 2025) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In reviewing a summary judgment motion, the court resolves "all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). However, the court need not draw any inference that is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Before the court may enter summary judgment, it must "ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014) (citing *Vt. Teddy Bear v. 1-800-BEARGRAM*, 373 F.3d 241, 244 (2d Cir. 2004) (explaining that the court "may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement"). "In doing so, the court may rely on other evidence in the record even if uncited." *Id* (citing Fed. R. Civ. P. 56(c)(3)). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*" *Vt. Teddy Bear*, 373 F.3d at 244 (emphasis in original).

To defeat a motion for summary judgment, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (collecting cases), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007). Parties "cannot rely on inadmissible hearsay in opposing a motion for summary judgment." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985). The court relies on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" to determine

11

whether summary judgment is appropriate. *See Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003); *see also* Fed. R. Civ. P. 56(c).

In a *pro se* case, courts liberally construe the *pro se* party's pleadings "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). Generally, where facts stated in a moving party's Rule 56.1 Statement are supported by evidence and denied only by the non-moving party's conclusory statement, courts are "directed to find such facts to be true." *Bob v. Madison Sec. Grp., Inc.*, No. 14-CV-9727 (KPF), 2016 WL 6952259, at *5 (S.D.N.Y. Nov. 28, 2016) (citing Joint Local Rules, S.D.N.Y. & E.D.N.Y. Loc. Civ. R. 56.1). While *pro se* litigants "are . . . not excused from meeting the requirements of Local Rule 56.1," *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (citing *Vt. Teddy Bear*, 373 F.3d at 246), "even where there is incomplete compliance with the Local Rules, a court retains discretion to consider the substance of the plaintiff's arguments." *Bob*, 2016 WL 6952259, at *5; *see also Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 406 n.1 (S.D.N.Y. 2012) ("In light of Plaintiff's *pro se* status, the Court overlooks his failure to file a Local Rule 56.1 Statement and conducts its own independent review of the record.").

## III. DISCUSSION

City Defendants move for summary judgment as to all of Kneitel's claims. (*See* Mot. at 1 ("All of plaintiff's claims fail as a matter of law.").) The court first addresses Kneitel's arguments that he was not provided with the discovery materials he requested and that City Defendants' motion is untimely, then turns to address the merits of Kneitel's claims against City Defendants.

### A. Kneitel's discovery requests

Kneitel asserts that City Defendants "have not fully complied with [his] discovery demands and [Ryvkin] has not only failed to answer the summons and complaint but has refused [Kneitel's]

request for him to appear for the purposes [sic] of being deposed." (*See* Pl.'s Stmt. of Facts ¶¶ 1, 3, 4, 6.) The court rejects Kneitel's request that City Defendants' motion should be dismissed on this ground for two reasons. *First*, then-Magistrate Judge Sanket J. Bulsara aptly managed discovery in this case for a period of almost two years, granting several extensions of the fact discovery deadline to accommodate Kneitel's numerous motions to compel. (*See* February 21, 2019 Order; May 9, 2019; October 16, 2019 Minute Entry and Order; January 24, 2020 Order; August 24, 2020 Order; October 30, 2020 Order.) *Second*, to the extent that Kneitel argues that he has been prejudiced by Ryvkin's failure to appear in this action, the court has already advised Kneitel that the law provides Kneitel with a remedy against Ryvkin for Ryvkin's lack of participation: default judgment. (*See* October 30, 2020 Order ("Plaintiff also seeks to revisit the Court's decisions with respect to Defendant Ryvkin. The request is denied. . . . Following the conclusion of the case against the litigating Defendants, Plaintiff may seek a default judgment against Defendant Ryvkin."); February 1, 2021 Order ("As to Defendant Ryvkin, while the Court is sympathetic to Plaintiff's inability to obtain records, statements or other evidence from this Defendant Ryvkin, the only remedy at this point is for him to seek a default judgment.").) Accordingly, the court declines to deny City Defendants' motion on the grounds that Kneitel was allegedly unable to collect information relevant to his claims during discovery.

### B.  City Defendants' motion is timely

Kneitel's argument that City Defendants' motion is untimely because discovery closed years ago is unavailing. (*See* Opp. at ECF p. 3 (citing Fed. R. Civ. P. 56(b) ("Time to File a Motion. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until

30 days after the close of all discovery.")).)[14] On August 24, 2020, the court held a status conference and issued an order concluding that "[t]he close of fact discovery shall be extended to **9/30/2020** and the final date to take the first step in dispositive motion practice shall be **11/2/2020**." (Min. Entry and Order Dated Aug. 24, 2020 (emphasis in original).) City Defendants took the first step in dispositive motion practice when they filed their motion for a pre-motion conference on October 29, 2020 concerning their anticipated motion for summary judgment. (*See* City Defs.' Mot. for Pre-Mot. Conf. (Dkt. 152).) While Kneitel is correct that discovery closed years ago, (*see id;* Feb. 1, 2021 Order ("At this point, discovery has closed, and the parties have taken steps towards summary judgment practice."), Rule 56(b) gives the court discretion to make exceptions to the default rule that parties must file motions for summary judgment within 30 days of the close of discovery. *See* Fed R. Civ. P. 56(b) ("Unless . . . *the court orders otherwise,* a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.") (emphasis added). The court granted City Defendants' motion for a pre-motion conference on August 6, 2021. (Aug. 6, 2021 Order.)[15] The court set a briefing schedule on City

---

[14] Kneitel cites "Local Rule 56(b)," but the specific language he discusses comports to Federal Rule of Civil Procedure 56(b), not to any of the local civil rules. (*See* Opp. at 3; *see generally* Joint Local Rules, S.D.N.Y. & E.D.N.Y.) Accordingly, the court construes Kneitel's argument as an assertion that City Defendants' motion is untimely under Rule 56(b) of the Federal Rules of Civil Procedure. *See Coombe*, 174 F.3d at 280.

[15] On September 23, 2021, counsel for City Defendants filed a motion to substitute attorney, which the court granted the following day. (*See* City Defs.' Mot. to Substitute Attorney (Dkt. 155) (requesting substitution of Morgan McKinney for Christopher D. DeLuca as counsel for City Defendants); Sept. 24, 2021 Order (granting motion).) On October 12, 2023, new counsel for City Defendants, Bailey Forcier, filed a notice of appearance. (*See* Not. of Appearance (Dkt. 156).) On December 11, 2023, City Defendants reported to the court that "the reason for [the] two-year delay in

Defendants' motion during a pre-motion conference held on May 22, 2024, and later granted Kneitel an extension of time to file his opposition to City Defendants' motion. (*See* Min. Entry Dated May 22, 2024; Nov. 7, 2024 Order ("The Court GRANTS *pro se* Plaintiff Kneitel's motion and sets the following schedule: Plaintiff's opposition due November 15, 2024; and [City] Defendants' reply, if any, due December 6, 2024.").) City Defendants filed their fully-briefed motion for summary judgment on December 6, 2024. (*See* City Defs.' Not. of Mot.) Accordingly, because the court exercised its authority to set aside Rule 56(b)'s 30-day deadline and City Defendants filed their motion by the court-ordered deadline, City Defendants' motion is timely.

### C.   False arrest and imprisonment (Counts 1, 2, 8)

Kneitel alleges that: (1) Defendants Greer, Salah, John Doe Police Officer, Dargenio, Barbieri, Alan, Molinini, and Yan deprived him of liberty in violation of his rights under the Fifth and Fourteenth Amendments to the Constitution through their "concerted unlawful and malicious arrest," (*see* Am. Compl. at 10 (bringing Count 1 under Section 1983)); (2) Defendants Greer and Salah deprived him of liberty through their "concerted unlawful and malicious detention and confinement," (*see id.* at 11 (bringing Count 2 under Section 1983)); and (3) Defendants City, Dargenio, Barbieri, Alan, Molinini and Dedo falsely arrested and imprisoned Kneitel and are "liable under the doctrine of respondeat superior," (*see id.* at 14-15 (Count 8)). City Defendants argue that these claims fail as a matter of law, and that at a minimum, Defendants Greer and Salah are entitled to qualified immunity. (*See* Mot. at 8-16.) City Defendants argue further that

---

providing the Court with dates for a pre-motion conference is that the previous attorneys assigned to represent defendants were unable to reach plaintiff to discuss scheduling, despite numerous attempts." (*See* Defs.' Feb. 29, 2024 Ltr. to Court (Dkt. 157) at ECF p. 8 (email from counsel for City Defendants to court proposing pre-motion conference date).)

Kneitel's claims against Dargenio, Barbieri, Alan, Molini, Yan, Delaney, and Dedo fail for lack of personal involvement. (*See id.* at 6-8.)

"Under New York law, the elements of a false arrest and false imprisonment claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019); *Caraballo v. City of New York*, 726 F. Supp. 3d 140, 152 (E.D.N.Y. 2024) (noting that Section 1983 claims for false arrest and false imprisonment are "substantially the same" as false arrest and false imprisonment claims brought under New York law), *on reconsideration in part sub nom. Caraballo v. Surriga*, No. 21-CV-285 (ARR) (VMS), 2024 WL 2701644 (E.D.N.Y. May 24, 2024).

"Probable cause is a complete defense to both federal and state law claims for false arrest and false imprisonment." *Ortiz v. Henriquez*, No. 99-CV-3268 (LMM), 2001 WL 1029411, at *4 (S.D.N.Y. Sept. 7, 2001), *aff'd*, 41 F. App'x 516 (2d Cir. 2002) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). An officer has probable cause to arrest when he or she has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). "When information is received from a putative victim or an eyewitness, probable cause exists . . . unless the circumstances raise doubt as to the person's veracity." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). And "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir.

1997). When assessing whether an officer has probable cause to arrest a suspect, the court considers "only the facts available to the officer at the time of the arrest and immediately before it." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021).

### 1.    Kneitel's January 24, 2013 arrest

Based on Ryvkin's 911 call and Detective Greer's interview of Ryvkin on January 24, 2013, the City Defendants had probable cause to arrest Kneitel on January 24, 2013. According to Detective Greer's summary of his interview with Ryvkin, Ryvkin reported to Detective Greer as follows:

> Mr. Ryvkin states early this morning, [Kneitel] approached him as [Ryvkin], exited the lobby of his residence, and yelled stop making noise[.] [Ryvkin] advises at this point he tried to ignore [Kneitel], and kept walking and [Kneitel] punched [Ryvkin] in the back and then to the face, causing him to fall to the ground, and hurt his back, he advises he went to Maimonides Hospital and was treated for his injuries. [Ryvkin] states he is now having a lot of back pain. He also confirmed he is 66 years old . . . Mr. Ryvkin advises that he wants and [sic] order of protection against [Kneitel].

(Follow-Up Rprt. at ECF p. 2.) Detective Greer had probable cause to arrest and confine Kneitel based on his interview with Ryvkin. Because "[p]robable cause is a complete defense to both federal and state law claims for false arrest and false imprisonment," *Henriquez*, 2001 WL 1029411, at *4, the court finds that City Defendants are entitled to summary judgment for Kneitel's false arrest and false imprisonment claims arising from his January 24, 2013 arrest.

### 2.    Kneitel's July 7, 2013 arrest

On June 30, 2013, Ryvkin reported to the NYPD that Kneitel called Ryvkin on the phone threatening him:

> On June 30, 2013, at approximately 1320 hours I did inter-view Ryvkin, Mark in regards to this case and he states that Michael Kneital [sic] did call [Ryvkin] on his cell phone and stated "Im [sic] gonna get you" putting [Ryvkin] in fear. [Ryvkin] has a valid order of protection against [Kneitel]. Docket #2013KN008147, EXP. 7/26/13 which states that Michael Kneital [sic] must refrain from contacting [Ryvkin]."

(*See* June 30 2013 Interview Rprt (Dkt. 168-14) (Officer Salah's report documenting his interview with Ryvkin).) Because Officer Salah had no information undermining the veracity of Ryvkin's report to Officer Salah on June 30, 2013, Officer Salah had prob-able cause to arrest Kneitel on July 7, 2013 for violating the Order of Protection. *See Curley*, 268 F.3d at 70. The court there-fore concludes that City Defendants are also entitled to summary judgment for Kneitel's false arrest and false imprisonment claims arising from his July 7, 2013 arrest. *See Henriquez*, 2001 WL 1029411, at *4. The court grants City Defendants' motion for summary judgment as to Counts 1, 2, and 8 of Kneitel's Amended Complaint.[16]

## D.  Strip search (Count 3)

Kneitel alleges that Defendants Greer, Salah, and John Doe Po-lice Officer caused "[him] to be subjected in the Kings County Central Booking County jail to a strip search of his body," in vio-lation of the Fourth, Fifth, Ninth, and Fourteenth Amendments to the Constitution. (*See* Am. Compl. at 11 (bringing Count 3 un-der Section 1983).) City Defendants argue that these claims fail

---

[16] As Kneitel's false arrest and imprisonment claims fail as a matter of law, the court need not address City Defendants' argument that Detective Greer and Officer Salah are entitled to qualified immunity. (*See* Mot. at 13-16.) *See Rera v. Gualtieri*, No. 14-CV-3123 (JS) (AKT), 2017 WL 590325, at *5 n.12 (E.D.N.Y. Feb. 14, 2017) ("Because Plaintiff's false arrest claim is without merit, it is unnecessary for the Court to determine whether quali-fied immunity applies.").

because Defendants Greer and Salah were not present at Central Booking during his alleged strip search. (*See* Mot. at 22-23.)

The Supreme Court has upheld jail policies that require "*all* arriving detainees to undergo a visual body cavity search before entering the jail's general population," regardless of the circumstances. *See Murphy v. Hughson*, 82 F.4th 177, 184-85 (2d Cir. 2023) (discussing *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 324-25 (2012)) (emphasis in original). Furthermore, "[t]he 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983.'" *Jimenez on behalf of J.M. v. Cnty. of Suffolk*, No. 23-CV-9476 (AMD) (RLM), 2025 WL 948348, at *5 (E.D.N.Y. Mar. 28, 2025) (quoting *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004)). "Simply being a supervisor is not enough to impute personal involvement onto a defendant; liability exists only where the 'defendant, through the official's own individual actions, has violated the Constitution.'" *Tarrant v. City of Mount Vernon*, No. 20-CV-9004 (PMH), 2022 WL 17070062, at *4 (S.D.N.Y. Nov. 17, 2022) (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)). Speculative assertions of personal involvement are "insufficient to establish a triable issue of fact." *Tarrant*, 2022 WL 17070062, at *4.

Kneitel's Statement of Facts lacks evidentiary support for his assertion that he was subject to an unlawful strip search. (*See* Pl.'s Stmt. of Facts at ECF p. 9 (citing *People v. Hall*, 10 N.Y.3d 303 (N.Y. 2008) and attaching "various news articles" concerning the "NYPD's illegal policy of strip searching detainees")). Only in his memorandum of law opposing City Defendants' motion does Kneitel describe his alleged strip search. (*See* Opp. at ECF p. 29-30 (arguing that an officer at Central Booking asked him to undress, "pull down his under wear, squat, lift his penis, then get dressed").) Although Kneitel cites no evidence for this assertion,

even if the court were to credit his recounting of what happened, Kneitel underwent a "visual body cavity search." *See Murphy*, 82 F.4th at 181 n.3 (2d Cir. 2023) (defining "visual body cavity search" as "the inspection of a person's body cavities without contact, such as by having the person manipulate his anatomy, bend over, or squat and cough"). And the Supreme Court has upheld a similar New Jersey policy that required "*all* arriving detainees to undergo a visual body cavity search before entering the jail's general population, 'regardless of the circumstances of the arrest, the suspected offense, or the detainee's behavior, demeanor, or criminal history.'" *Id.* (quoting *Florence*, 566 U.S. at 324-25). Accordingly, Kneitel's claim that he was unlawfully searched at Central Booking fails as a matter of law.[17] The court grants City Defendants' motion for summary judgment as to Count 3 of Kneitel's Amended Complaint.

### E.  *Monell* claim (Count 5)

Kneitel alleges that the City Defendants violated Section 1983 by "[a]cting under color of law and pursuant to official policy or custom." (Am. Compl. at 12-13.) Although Kneitel's Amended Complaint does not mention *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the court construes his claim as a *Monell* claim. (*See* Opp. at ECF p. 37 ("Plaintiff, while not an attorney and untrained in the artful expression of legal argument and innuendo does make a [*Monell*] claim over and over again.").) *See Coombe*, 174 F.3d at 280. City Defendants assert that Kneitel's *Monell* claim fails as a matter of law because "there is *no* evidence in the record of *any* municipal practices,

---

[17] Kneitel's reliance on *Hall* is inapposite because that case concerned a "manual body cavity search," 10 N.Y.3d at 313, which the Second Circuit noted is "more intrusive than a [visual body cavity search]," *Murphy*, 82 F.4th at 181 n.3 (noting that "manual body cavity search[es]" entail "physical inspection of body cavities").

polices, training programs, or anything else that could possibly support a *Monell* claim." (Mot. at 27 (emphasis in original).)

To hold a city liable under Section 1983, a plaintiff must establish three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). A plaintiff can prove this by asserting that a city's officers "implement[ed] or execute[ed] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" that is unconstitutional. *See Monell*, 436 U.S. at 690-91 (noting that unwritten governmental "custom[s]" can still give rise to liability because "[a]lthough not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law") (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-168 (1970) (discussing Section 1983)).

Kneitel alleges that "[a]cting under color of law and pursuant to official policy or custom," City Defendants violated his constitutional rights by: (1) "unlawfully and maliciously harassing" him; (2) "unlawfully and maliciously arresting, imprisoning and prosecuting" him, (3) "conspiring" to violate his constitutional rights; and (4) "otherwise depriving [him] of his constitutional and statutory rights, privileges, and immunities." (*See* Am. Compl. at 12.) However, as the court explains throughout this Memorandum & Order, City Defendants had probable cause to arrest and prosecute Kneitel. His *Monell* claim must fail because he has not made the requisite evidentiary showing at this stage to establish an "official policy or custom" that existed at the NYPD or the Brooklyn District Attorney's Office that violated his constitutional rights. (*See* generally Am. Compl.) *See Jimenez v. City of New York*, No. 21-CV-6133 (RPK) (JRC),

2024 WL 198319, at *8 (E.D.N.Y. Jan. 18, 2024) (granting summary judgment for the City of New York because plaintiff's "summary judgment brief points to no evidence" of an official policy of unlawful arrests or prosecutions), *aff'd sub nom. Jimenez v. Bogle*, No. 24-323, 2025 WL 883211 (2d Cir. Mar. 21, 2025). While Kneitel argues in opposition to City Defendants' motion that "[a]ccording to the Federal Criminal Justice System, a person is arrested at the conclusion of the investigation" and "NO INVESTIGATION EVER TOOK PLACE," (Opp. at ECF p. 37-38), that assertion is not supported by the law or the facts. Accordingly, the court grants City Defendants' motion for summary judgment as to Count 5 of Kneitel's Amended Complaint.

## F.    Malicious prosecution (Count 6)

Kneitel asserts that the City Defendants are liable for malicious prosecution. (*See* Am. Compl. at 13-14 ("Defendants instituted criminal process against the plaintiff with malice.").) City Defendants argue that Kneitel's malicious prosecution claim fails because there was probable cause to prosecute Kneitel, Kneitel cannot establish "malice," and Assistant District Attorneys Hogg and Tendy are entitled to absolute immunity. (Mot. at 16-22.)

"Under New York State law, a plaintiff seeking to pursue a claim of malicious prosecution must prove the following four elements: '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's action.'" *Dispenza v. City of New York*, No. 19-CV-5645 (DG) (CLP), 2023 WL 11845608, at *16 (E.D.N.Y. Mar. 7, 2023) (quoting *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)); *Anderson v. City of New York*, 817 F. Supp. 2d 77, 90 (E.D.N.Y. 2011) ("The elements of a malicious prosecution claim brought under Section 1983 are substantially the same as in malicious prosecution claims brought under New York law."). The Second Circuit has reasoned that a

plaintiff seeking Section 1983 relief for malicious prosecution "must [also] show some post-arraignment deprivation of liberty that rises to the level of a constitutional violation." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995).

"[P]robable cause is a complete defense to a claim of malicious prosecution." *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) (noting that a grand jury indictment "creates a presumption of probable cause" that may be rebutted only by "evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."). And "arguable probable cause" is sufficient to grant qualified immunity on malicious prosecution claims. *See Betts v. Shearman*, 751 F.3d 78, 82-83 (2d Cir. 2014).

Kneitel's malicious prosecution claim fails because he cannot establish that City Defendants "lack[ed] probable cause for commencing the proceeding." *See Dispenza*, 2023 WL 11845608, at *16. As discussed *supra*, City Defendants had probable cause to arrest him on January 24, 2013 and July 7, 2013. A Grand Jury also indicted Kneitel on charges arising from his arrests: attempted assault in the second degree, attempted assault in the third degree, harassment in the second degree, aggravated harassment in the second degree, criminal contempt in the first degree, and criminal contempt in the second degree. (*See* City Defs.' Rule 56.1 Stmt. ¶ 28.) Kneitel's unsupported assertion that Assistant District Attorney Tendy lied at the Grand Jury proceedings is insufficient to rebut the presumption of probable cause for Kneitel's prosecution. *See supra* Part I.A.2 n. 12; *Manganiello*, 612 F.3d at 161-62. Kneitel's conclusory assertions about City Defendants' motivations falls short of the "hard evidence" required to show malice and defeat City Defendants' motion at this stage. *See D'Amico*, 132 F.3d at 149; *Fulton v. Robinson*, 289 F.3d 188, 198-99 (2d Cir. 2002) (affirming dismissal of malicious prosecution claim for lack of malice, and because plaintiff's evidence did

not rebut the presumption of probable cause created by the indictment). Additionally, the fact that the criminal charges against Kneitel were dismissed on speedy trial grounds "does not affirmatively indicate his innocence, as required under Section 1983." *See e.g.*, *Roger v. Cnty. of Suffolk*, No. 13-CV-5290 (JS) (ARL), 2020 WL 2063415, at *2 (E.D.N.Y. Apr. 29, 2020); *Jamison v. Cavada*, No. 17-CV-1764 (LTS) (SDA), 2019 WL 6619328, at *5 (S.D.N.Y. Dec. 5, 2019), *as clarified on reconsideration,* No. 17-CV-1764 (LTS) (SDA), 2020 WL 3073234 (S.D.N.Y. June 10, 2020). Accordingly, the court grants City Defendants' motion for summary judgment as to Count 6 of Kneitel's Amended Complaint.[18]

### G.   Malicious abuse of process (Count 7)

Kneitel claims that Defendants Greer, Salah, Hogg, and Tendy maliciously abused the judicial process. (*See* Am. Compl. at 14.) City Defendants argue that this claim fails as a matter of law. (Mot. at 24-25.)

"In New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir.

---

[18] As Kneitel's malicious prosecution claim fails as a matter of law, the court need not address City Defendants' argument that Assistant District Attorneys Hogg and Tendy are entitled to absolute immunity. (*See* Mot. at 20-22.) *See Ortiz v. City of New York*, No. 97-CV-1596 (DAB), 1998 WL 78288, at *2 n.2 (S.D.N.Y. Feb. 24, 1998) (declining to address absolute immunity issue because plaintiff failed to state a Section 1983 claim against the prosecutor, but nevertheless noting that "prosecutors are generally absolutely immune from liability under section 1983 for conduct 'initiating a prosecution and in presenting the state's case'") (quoting *Imbler v. Pachtman*, 424 U.S. 409, 425-28 (1976)).

2003) ("Malicious abuse of criminal process also supports liability under [Section] 1983.") (*id.* at 76-77); *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) ("While malicious prosecution concerns the improper issuance of process, the gist of abuse of process is the improper use of process after it is regularly issued."). "The crux of a malicious abuse of process claim is the collateral objective element." *Kraft v. City of New York*, 696 F.Supp.2d 403, 416 (S.D.N.Y. 2010), *aff'd*, 441 Fed.Appx. 24 (2d Cir. 2011). To establish a collateral objective, a plaintiff must prove "not that a defendant acted with an improper motive, but rather an improper purpose — that is, he must claim that a defendant aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Besedin v. Cnty. of Nassau*, No. 18-CV-819 (NRM) (ST), 2024 WL 4225956, at *15 (E.D.N.Y. Sept. 18, 2024).

Courts throughout this Circuit "have recognized that probable cause defeats a claim for abuse of process by demonstrating that a defendant acted with excuse or justification." *Cruz v. Reiner*, No. 11-CV-2131 (BMC) (SMG), 2011 WL 6204101, at *2 (E.D.N.Y. Dec. 12, 2011) (collecting cases).

Kneitel's malicious abuse of process claim fails as a matter of law because, as discussed *supra*, City Defendants had probable cause to arrest and prosecute him. Therefore, City Defendants acted with justification, precluding establishment of the second element of a malicious abuse of process claim. *See id.* Kneitel has put forward no credible evidence that City Defendants improperly used the judicial process "after it [was] regularly issued." *See Cook*, 41 F.3d at 80. Accordingly, the court grants City Defendants' motion for summary judgment as to Count 7 of Kneitel's Amended Complaint.

### H.  Battery (Count 9)

Kneitel claims that the City Defendants committed battery against him by handcuffing him and strip-searching his body.

25

(*See* Am. Compl. at 15.) City Defendants argue that this claim fails on the merits. (*See* Mot. at 28-30.)

Under New York law, a battery claim requires a showing of "bodily contact, made with intent, [that is] offensive in nature." *Fugazy v. Corbetta*, 825 N.Y.S.2d 120, 122 (2d Dep't 2006). State law claims for battery are "subject to the same analysis the court employs to address the excessive force claims." *S.B. v. City of New York*, No. 14-CV-1021 (KAM) (PK), 2016 WL 4530455, at *12 (E.D.N.Y. Aug. 29, 2016). The Supreme Court has held that under the Fourth Amendment, police officers are permitted to use "objectively reasonable" force to effectuate an arrest. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Courts evaluate the reasonableness of handcuffing by considering whether: "1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005) (collecting cases). "There is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (collecting cases).

Aside from arguing generally this his "state law claims are valid," Kneitel's opposition brief does not address City Defendants' argument that his battery claim fails on the merits. (*See generally* Opp.) Kneitel has not made a showing that he was subjected to unreasonable force when he was handcuffed on January 23, 2014 or July 7, 2013. *See Connor*, 490 U.S. at 397; *Freshwater*, 623 F.3d at 96. The NYPD's handcuffing of Kneitel, arrested on charges of violent assault, was "objectively reasonable." *See Connor*, 490 U.S. at 397. Kneitel has not alleged that the handcuffs were unreasonably tight or that he suffered injury to his wrists. *See Esmont*, 371 F. Supp. at 215. Indeed, Kneitel never sought

any medical treatment because of his interactions with City De-
fendants. (City Defs.' Rule 56.1 Stmt. ¶ 30.) And Kneitel's alleged
strip search cannot support a battery claim because the search
was a *visual* body cavity search and therefore did not involve City
Defendants physically touching Kneitel. *See Corbetta*, 825
N.Y.S.2d at 122. Accordingly, the court grants City Defendants'
motion for summary judgment as to Count 9 of Kneitel's
Amended Complaint.

### I.    Conspiracy (Counts 4, 10)

Kneitel alleges that City Defendants engaged in an unlawful con-
spiracy to wrongfully arrest, confine, and prosecute Kneitel. (*See*
Am. Compl. at 11-12, 15-16.) City Defendants argue that there
is no evidentiary support for this assertion. (*See* Mot. at 23-24.)

Under New York law, to state a civil conspiracy claim a plaintiff
must allege the primary tort and the specific elements of a con-
spiracy: "(a) a corrupt agreement between two or more persons,
(b) an overt act in furtherance of the agreement, (c) the parties'
intentional participation in the furtherance of a plan or purpose,
and (d) the resulting damage or injury." *Chrysler Cap. Corp. v.
Century Power Corp.*, 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991)
(citing *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir.1986)). "In
order to survive a motion to dismiss on a [Section] 1983 conspir-
acy claim, the plaintiff must allege (1) an agreement between
two or more state actors, (2) concerted acts to inflict an uncon-
stitutional injury, and (3) an overt act in furtherance of the goal."
*Carmody v. City of New York*, No. 5-CV-8084 (HB), 2006 WL
1283125, at *5 (S.D.N.Y. May 11, 2006) (citing *Ciambriello v.
Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)).

Kneitel's argument in opposition to City Defendants' motion for
summary judgment on his conspiracy claims is conclusory and
unsupported by the evidence. (*See* Opp. at ECF pp. 32-35.) Ra-
ther than attempting to set forth arguments as to why the record
supports his conspiracy claims brought under New York law or

Section 1983, Kneitel merely presents a timeline of events, argues that City Defendants wrongfully chose to believe Ryvkin's report, and turns to denigrating the victim and the prosecution. (*Id.* at ECF p. 34 (describing Ryvkin as a "narcissistic sociopath").) No rational jury could find in favor of Kneitel because Kneitel's conspiracy claims are unmoored from and completely unsupported by the record before this court. Thus, "there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224. Accordingly, the court grants City Defendants' motion for summary judgment as to Counts 4 and 10 of Kneitel's Amended Complaint.

### J.    Intentional infliction of emotional distress (Count 11)

Kneitel alleges that City Defendants intentionally inflicted emotional distress on Kneitel. (*See* Am. Compl. at 16-17.) City Defendants argue that this claim fails because "(1) the alleged conduct here is insufficiently extreme and outrageous to state a plausible claim for relief and (2) public policy bars claims sounding in [intentional infliction of emotional distress] against the City." (Mot. at 30.)

Plaintiffs must establish the following elements to prove intentional infliction of emotional distress: "(1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress." *Brunache v. MV Transp., Inc.*, 59 N.Y.S.3d 37, 40 (2d Dep't 2017).

Kneitel's Amended Complaint pleads the elements of an intentional infliction of emotional distress claim by setting forth legal conclusions that neatly map onto the cause of action's elements. (*See* Am. Compl. at 16-17.) However, "[m]ere conclusory allegations are insufficient as a matter of law to support a claim for intentional infliction of emotional distress." *Davis v. City of New York*, No. CV-4309 (SAS), 2000 WL 1877045, at *10 (S.D.N.Y.

Dec. 27, 2000). Aside from arguing generally this his "state law claims are valid," Kneitel's opposition brief does not address City Defendants' argument that his intentional infliction of emotional distress claim fails on the merits. (*See generally* Opp.) And there is no evidence that City Defendants engaged in extreme or outrageous conduct. *See Goolden v. Wardak*, No. 19-CV-6257 (JPO), 2020 WL 4271695, at *5 (S.D.N.Y. July 23, 2020) ("New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress."). Thus, Kneitel's intentional infliction of emotional distress claim fails as a matter of law. Accordingly, the court grants City Defendants' motion for summary judgment as to Count 11 of Kneitel's Amended Complaint.

### K.  Negligence (Counts 12-13)

Kneitel brings two other claims: negligence and negligent infliction of emotional distress. (*See* Am. Compl. at 17-18.) The court presumes that Kneitel brings these claims under New York state law because, unlike Kneitel's other claims, "[S]ection 1983 liability may not be premised upon negligence." *See Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 n.5 (2d Cir. 1991) (collecting Supreme Court cases). City Defendants assert that all Kneitel's claims against the City Defendants premised on state law, including his two negligence claims, fail as a matter of law because Kneitel failed to serve a timely notice of claim on the City. (*See* Mot. at 28.) The court finds that Kneitel's negligence and negligent infliction of emotional distress claims are barred because he failed to comply with Sections 50–e and 50–i of the New York Municipal Law.

"New York Municipal Law Section 50–e requires a plaintiff to serve notice of a tort claim upon a municipality within 90 days after the claim arises." *Jackson v. City of New York*, 29 F. Supp. 3d 161, 181-82 (E.D.N.Y. 2014) (citing N.Y. Gen. Mun. L. § 50–e(1)). This requirement also extends to claims brought against

"any officer, appointee or employee thereof." N.Y. Gen. Mun. L. § 50–e(1)(a). New York Municipal Law Section 50–i generally requires that such actions be filed "within one year and ninety days after the happening of the event upon which the claim is based." N.Y. Gen. Mun. L. § 50–i(1). New York state courts construe the notice of claim requirements "strictly." *See Humphrey v. Cnty. of Nassau*, No. 6-CV-3682 (JFB) (AKT), 2009 WL 875534, at *20 (E.D.N.Y. Mar. 30, 2009). Although courts must construe *pro se* plaintiffs' complaints "liberally," federal courts "cannot exempt [*pro se* plaintiffs] from the notice of claim requirements under New York law." *Ransom v. Banks*, No. 20-CV-10232 (MKV), 2022 WL 769344, at *8 (S.D.N.Y. Mar. 14, 2022); *Grennan v. Nassau Cnty.*, No. 4-CV-2158 (DRH) (WDW), 2007 WL 952067, at *17 (E.D.N.Y. Mar. 29, 2007) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action.").

Kneitel's claims arise from arrests that took place on January 24, 2013 and July 7, 2013. (*See* Am. Compl. at 6-7; City Defs.' Rule 56.1 Stmt. ¶¶ 11, 21.) As to Kneitel's negligence and negligent infliction of emotional distress claims against the City Defendants, Kneitel was required to comply with the rules concerning notices of claim because the City Defendants are "public corporation[s]" (*i.e.*, the City) or "officer[s], appointee[s] or employee[s] thereof" (*i.e.* all individual defendants in this matter other than Ryvkin). *See* N.Y. Gen. Mun. Law § 50–e(1)(a). Kneitel also has not alleged that the officers were acting outside the scope of their employment such that a notice would not be required. *Wharton v. Cnty. of Nassau*, No. 10-CV-265 (JS) (AKT), 2013 WL 4851713, at *15 (E.D.N.Y. Sept. 10, 2013) (concluding that where plaintiffs alleged that municipal employees committed intentional torts, those employees were not acting within the scope of their employment and such plaintiffs are "not required to file a notice of claim" as to those defendants).

Kneitel was therefore required to serve a notice of claim on City Defendants for his negligence and negligent infliction of emotional distress claims stemming from his January 24, 2013 arrest by April 24, 2013 and file a complaint by April 24, 2014. *See* N.Y. Gen. Mun. L. §§ 50–e(1) and 50–i(1). With respect to Kneitel's negligence and negligent infliction of emotional distress claims against the City Defendants arising from his July 7, 2013 arrest, Kneitel was required to serve a notice of claim on the City by October 5, 2013 and file a complaint by October 5, 2014. *See id.* However, Kneitel did not submit his Notice of Claim to the City until December 16, 2014, (*see* Not. of Claim (Dkt. 168-17)), and he filed this action on December 4, 2025, (*see* Compl.). Accordingly, under New York law, Kneitel failed to timely serve the City with a notice of claim and bring this action. For this reason, the court grants City Defendants' motion for summary judgment as to Kneitel's negligence claim (Count 12) and negligent infliction of emotional distress claim (Count 13) against City Defendants. *See Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999) ("Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action."); *Smith v. Reid,* No. 98-CV-1429 (SJ), 2004 WL 528437, at *11 (E.D.N.Y. Mar. 9, 2004) (granting defendants' motion for summary judgment because "Plaintiff failed to file a timely notice of claim").

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS City Defendants' motion for summary judgment in its entirety. The Clerk of Court is respectfully DIRECTED to enter judgment dismissing all of Kneitel's claims against Defendants City of New York, William Greer, Ali Salah, Eric Dargenio, William Barbieri, Alan Solomon, Vincent Molinini, David Yan, Robert Delany, Michael Dedo, Courtney Hogg, Krysten Tendy, Colin Miskowitz, and Joseph Solomon. As this case has now concluded as to the litigating

defendants, Plaintiff is now permitted to seek default judgment against Defendant Mark Ryvkin if he so chooses. The Clerk of Court is respectfully DIRECTED to send a copy of this Memorandum & Order to *pro se* Plaintiff at his mailing address.

SO ORDERED.

Dated:     Brooklyn, New York
           September 23, 2025

                                        s/Nicholas G. Garaufis
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge